IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MOZELLA R. ARMSTRONG,

    Plaintiff,                           No. CIV S-06-1673 DAD

    v.

MICHAEL J. ASTRUE,[1]              ORDER
Commissioner of Social Security,

    Defendant.
_____/

        This social security action was submitted to the court, without oral argument, for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons explained below, the decision of the Commissioner of Social Security (Commissioner) is reversed and this matter is remanded for further proceedings consistent with this order.

**PROCEDURAL BACKGROUND**

        Plaintiff Mozella Armstrong became eligible for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act (Act) based on a finding of disability

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Mr. Astrue is substituted as defendant in this suit pursuant to 42 U.S.C. § 405(g) and Fed. R. Civ. P. 25(d)(1).

1


before the age of 18 pursuant to a determination in 1992, when plaintiff was 8 years old, finding that her severe impairments of mental retardation, learning disability, and speech delay were medically and/or functionally equivalent in severity, as of February 3, 1990, to § 12.05D of the Listing of Impairments. (Transcript (Tr.) at 16, 68.)

        A continuing disability review (20 C.F.R. § 416.987) was initiated by the Commissioner once plaintiff reached the age of 18.[2] (Tr. at 16, 38.) Plaintiff claimed disability because of mental retardation, back problems, shortness of breath, and headaches. (Tr. at 71.) Plaintiff was notified by a disability redetermination decision dated August 29, 2002, that she was not disabled under the definition of disability for adults and was no longer disabled for Social Security purposes as of August 1, 2002. (Tr. at 71-74.) The disability redetermination decision reflected that there was insufficient medical evidence in the file to make a current medical determination and that plaintiff had failed to go to consultative examinations scheduled on August 8, 2002, and August 16, 2002, despite appointment reminders sent August 1, 2002, and August 6, 2002. (Tr. at 71.) Plaintiff's September 16, 2002 request for reconsideration of the disability redetermination decision was denied on January 8, 2003. (Tr. at 75-77, 78-80.) On January 24, 2003, plaintiff filed a timely request for a hearing before an administrative law judge (ALJ), and a hearing was scheduled for August 6, 2003. (Tr. at 38, 64-67, 81-82.) Plaintiff did not appear for the scheduled hearing, and an order of dismissal was issued on August 12, 2003. (Tr. at 38, 61-63.) On September 30, 2003, plaintiff submitted a timely request for review of the order, claiming that she did not receive the notice of hearing. (Tr. at 38, 60.) Finding good cause, the Appeals Council granted plaintiff's request on November 12, 2003, vacated the order of dismissal, and remanded the case for further consideration. (Tr. at 38, 84-85.) Pursuant to the order of the Appeals Council, a notice was issued on January 22, 2004, scheduling a supplemental hearing before the ALJ on February 12, 2004. (Tr. at 56-59.)

---

[2] Plaintiff's date of birth is December 12, 1983. (Tr. at 69.) She attained 18 years of age on December 12, 2001.

It appears that the supplemental hearing was combined with a hearing on plaintiff's original application for SSI filed January 9, 1992. By notice dated April 1, 2004, plaintiff was notified of a hearing date of April 27, 2004, on the January 9, 1992 application. (Tr. at 51-54.) At the hearing conducted by ALJ F. Lamont Liggett on April 27, 2004, plaintiff was represented by a non-attorney representative, Danielle Duarte. (Tr. at 245-61.) The ALJ found it necessary to arrange for an orthopedic examination and a medical assessment of plaintiff's ability to work. (Tr. at 260.) The ALJ planned to arrange for the examination, review the assessment, and then issue a decision. (Tr. at 260-61.) After the hearing, ALJ Liggett passed away before issuing a decision. (Tr. at 39.) The case was reassigned to ALJ Joseph F. De Pietro, who reviewed the record, including the detailed notes and instructions left by ALJ Liggett, and determined that another hearing was not required. (Tr. at 39.) ALJ De Pietro issued a written decision on October 22, 2004, finding plaintiff not disabled through the date of his decision. (Tr. at 35-48.)

On October 29, 2004, plaintiff requested that the Appeals Council review the ALJ's October 22, 2004 decision. (Tr. at 34.) On March 25, 2005, the Appeals Council granted the request for review and remanded the case for further proceedings in accordance with its order. (Tr. at 88-89.) The ALJ was directed to further evaluate the issue of whether plaintiff has a severe physical impairment, evaluate plaintiff's subjective complaints and provide a rationale for the evaluation, and if warranted, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on plaintiff's occupational base. (Tr. at 89.)

On August 5, 2005, a supplemental hearing was held by ALJ Antonio Acevedo-Torres pursuant to a notice dated July 9, 2005. (Tr. at 30-33, 262-77.) Plaintiff was again represented by non-attorney representative Danielle Duarte. (Tr. at 262.) In an unfavorable decision issued on December 12, 2005, the ALJ determined that plaintiff was not disabled through the date of the decision. (Tr. 13-29.) The ALJ entered the following findings:

/////

>1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
>2. The claimant's mild mental retardation is a "severe" impairment, based upon the requirements in the Regulations (20 CFR § 416.920).
>
>3. This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
>4. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.
>
>5. The claimant retains the residual functional capacity for work at all exertional levels. The claimant does have mental impairments that preclude working in environments requiring more than simple and repetitive tasks.
>
>6. The claimant has no past relevant work (20 CFR § 416.965).
>
>7. The claimant is a 'younger individual' (20 CFR § 416.963).
>
>8. The claimant is 'illiterate' (20 CFR § 416.964).
>
>9. The claimant has no exertional limitations (20 CFR § 416.945).
>
>10. Based on Social Security Rulings 83-10 and 85-15, and considering the range of work at all levels that the claimant is still functionally capable of performing, in combination with her age, education, and work experience, the claimant is able to make a successful adjustment to work that exists in significant numbers in the national economy, a finding of "not disabled" is therefore reached under the framework of Rule 204.00 of the Medical-Vocational Guidelines.
>
>11. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 416.920(g)).

(Tr. at 28-29.)

On April 14, 2006, the Appeals Council declined review of the ALJ's December 12, 2005 decision. (Tr. at 8-10.) On June 29, 2006, plaintiff was granted an extension of 30 days to file a civil action. (Tr. at 6.) Plaintiff subsequently sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on July 28, 2006.

4

**LEGAL STANDARD**

The Commissioner's decision will be upheld if the findings of fact are supported by substantial evidence and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Morgan, 169 F.3d at 599; Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920. See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). This five-step process can be summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

5

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Yuckert, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff advances three arguments in support of her motion. First, she asserts that the ALJ failed to properly evaluate whether her mental retardation met the requirements of Listings 12.05C or D. Second, she contends that the ALJ improperly rejected her testimony without providing a legal basis for doing so. Third, she claims that the ALJ erred in applying the grids without consulting a vocational expert. The court addresses these arguments below.

### I. Whether the ALJ Properly Evaluated Listings 12.05C and D

At step three of the sequential evaluation process, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1. The Listing of Impairments sets forth, for adults, impairments severe enough to prevent an individual from engaging in any gainful activity, regardless of his or her age, education, or work experience. 20 C.F.R. § 416.925(a).

The claimant bears the burden of establishing a prima facie case of disability under the Listing of Impairments. Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). "For a claimant to qualify for

benefits by showing that his impairment matches a listing, it must meet *all* of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990).  For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is "equivalent" to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the single most similar listed impairment.  Id. at 531.

Here, plaintiff claims that the medical evidence of record establishes that her mental impairment meets the requirements of both § 12.05C and § 12.05D.  The regulations provide as follows regarding § 12.05:

> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings.  Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation.  It also contains four sets of criteria (paragraphs A through D).  If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.

20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.00A.  "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."  20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.05.

Listing 12.05C requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  Listing §12.05D requires

> [a] valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.05D.

7

With regard to the first prong of § 12.05C and § 12.05D, requiring a valid verbal, performance, or full scale IQ of 60 through 70, the ALJ found, and defendant does not dispute, that plaintiff meets the IQ requirement. (Tr. at 23.) Plaintiff received a valid performance score between 60 and 70 upon administration of the Wechsler Adult Intelligence Scale by Dr. Koulianos in November 2002 and valid verbal, performance, and full scale scores between 60 and 70 upon administration of the test by Dr. Regazzi in June 2005. (Tr. at 162, 239.) When the test was administered by Dr. Koulianos, plaintiff received verbal and full scale scores above 70. However, pursuant to § 12.00D(6)(c), when more than one score is derived from testing, the lowest of the scores should be used in conjunction with § 12.05. Thus, plaintiff's performance IQ score of 63 in testing administered by Dr. Koulianos and plaintiff's verbal, performance, and full scale scores of 64, 65 and 62, respectively, in testing administered by Dr. Regazzi fall within the range required by § 12.05C and § 12.05D.

With respect to the second prong of § 12.05C, plaintiff has failed to show that she suffers from a physical or other mental impairment which imposes additional and significant work-related limitations. An additional mental impairment satisfies the requirement of § 12.05 when "its effect on a claimant's ability to perform basic work activities is more than slight or minimal." Fanning v. Bowen, 827 F.2d 631, 633 (9th Cir. 1986). Basic work activities include: "(1) physical functions such as walking . . . lifting . . . carrying . . . , (2) capacities for seeing, hearing, and speaking, (3) understanding, carrying out, and remembering simple instructions, (4) use of judgment, (5) responding appropriately to supervision, co-workers and usual work situations, and (6) dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b). Tests conducted by Dr. Borges found that plaintiff had no limitations with regard to standing, walking, sitting, pushing, or pulling, that she "could lift, carry, push, and pull 50 pounds occasionally and 25 pounds frequently," that plaintiff had no "visual or communicative limitations," and that she "could follow simple commands and tasks." (Tr. at 229-30.) Dr. Koulianos stated that plaintiff should be able to "interact appropriately with peers, supervisors, or

8

co-workers in a satisfactory manner" and should be able to "manage transitions or the minor stressors associated with employment . . . for entry-level job situations." (Tr. at 161.) The record does not appear to contain any comments on plaintiff's use of judgment.

Regarding plaintiff's allegations of back pain and headaches, the ALJ found that "the objective medical evidence does not support more than minimal limitations in her ability to perform the basic physical activities of carrying, lifting, pulling, pushing, sitting, standing or walking." (Tr. at 19.) The ALJ's determination is based on the medical reports of Dr. James Martin and Dr. Gabriel Borges. (Tr. at 155-57, 226-35.) Dr. Borges found no functional limitations related to plaintiff's headaches, no limitations with regard to standing, walking, sitting, pushing, or pulling, no postural limitations, no manipulative limitations, no visual or communicative limitations, and the ability to "lift, carry, push, and pull 50 pounds occasionally and 25 pounds frequently." (Tr. at 230.) As for plaintiff's allegations of back pain, Dr. Martin conducted a physical evaluation on October 29, 2002, and found no functional restrictions attributable to any medical condition. (Tr. at 157.) The ALJ also relied on Dr. Regazzi's report, which indicates that plaintiff is "capable of understanding and carrying out simple instructions" and routine tasks and is also capable of "carrying out all personal care and some daily living activities independently." (Tr. at 240.) Dr. Regazzi noted that plaintiff had below average intelligence and could be expected to have difficulty carrying out complex tasks and that plaintiff's work pace could be "expected to be slower than that of her peers." (Tr. at 240.)

The ALJ also considered plaintiff's claim of depression and determined that there was not enough evidence to support the claim. In particular, the ALJ noted that there was no evidence of plaintiff suffering from decreased energy, anhedonia, suicidal ideation, hallucinations, psychomotor agitation or retardation, feelings of hopelessness or worthlessness, or appetite disturbance, all of which are common symptoms of depression. (Tr. at 21, 160.) The ALJ found ample evidence that plaintiff has difficulty concentrating and thinking and suffers sleep disturbance consistent with depression but determined that "these problems are squarely

rooted in her mental retardation and not from any underlying affective disorder." (Tr. at 21.) The ALJ cited the fact that plaintiff was not taking any psychiatric medication and had not "had or sought any significant psychiatric treatment for any underlying depressive disorder for more than two years." (Tr. at 21.) Dr. Koulianos stated that plaintiff did not describe "any significant emotional disruption including depression or anxiety." (Tr. at 158.) Although Dr. Regazzi diagnosed plaintiff with "Depressive Disorder, NOS," she did not identify any functional limitations resulting from the disorder. (Tr. at 239-40.)

Finally, with regard to the diagnosed learning disorder that causes plaintiff to have difficulty reading and writing, the ALJ determined that the disorder is not an impairment separate from plaintiff's mental retardation because it does not create any additional work-related limitations. Although a reading and writing disorder may constitute a separate disability, it may also overlap significantly with mental retardation and may not create a significant additional restriction on the claimant's work abilities. See Michael v. Apfel, No. C-9903936-CRB, 2000 WL 1006534, at *6 (N.D. Cal. July 7, 2000) (in evaluating plaintiff's disability under § 12.05C, the court found plaintiff's reading disorder did not create additional work-related limitations). The court affirms the ALJ's determination that plaintiff's learning disability is not an "other mental impairment" for purposes of § 12.05C.

With regard to plaintiff's contention that her impairments meet or equal § 12.05D, the court finds substantial evidence in support of the ALJ's finding that they do not. Plaintiff argues that the evidence submitted documents her "'marked difficulties in maintaining concentration, persistence, or pace' and 'marked restrictions in activities of daily living.'" (Pl.'s Mot. Summ. J. at 18.) Where "marked" is used as the standard for measuring the degree of limitation, "it means more than moderate but less than extreme." 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.00C. "Marked" is not defined "by a specific number of different activities of daily living in which functioning is impaired, but by the nature and overall degree of interference with function." 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.00C(1).

1         The ALJ found, with respect to the first criterion listed in §12.05D, that plaintiff's
2  level of restriction of daily activities was "at most mild, well short of a marked limitation." (Tr.
3  at 23, 180.) For purposes of determining whether there has been "marked restriction of activities
4  of daily living" under § 12.05D, "[a]ctivities of daily living include adaptive activities such as
5  cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence,
6  caring appropriately for your grooming and hygiene, using telephones and directories, and using
7  a post office." 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.00C(1).

8         Medical reports and plaintiff's own testimony indicate that in 2002 she lived
9  alone, was capable of a "wide range of cleaning, cooking, socializing, and working part-time"
10 and that she is capable of doing her own grocery and personal shopping. (Tr. at 189.) Plaintiff
11 testified that she worked at a restaurant called the Jamaica House "Tuesday through Friday, from
12 11:30-5:00 PM" and that she usually was the hostess, greeting customers and getting them
13 drinks. (Tr. at 189.) Plaintiff also testified that she also washed dishes and cleaned, and served
14 as a waitress on Wednesdays. (Tr. at 189.) Plaintiff had trouble spelling and thus had to
15 abbreviate orders, sometimes forgot to place orders in the kitchen for the cook and had
16 difficulties if given too many orders, multiple changes, or conflicting directions. (Tr. at 189.)
17 Plaintiff testified that she was always on time for her job, always finished the job, and got along
18 well with people. At the hearing on April 27, 2004, plaintiff testified that she left her job as a
19 hostess at Jamaica House when she secured a seasonal job working as a playground attendant at
20 Raley Field, home of the Sacramento Rivercats AAA baseball team. (Tr. at 251-53.) Plaintiff
21 had worked at Jamaica House for about six months. (Tr. at 269.) When asked by the ALJ why
22 she cannot work now, plaintiff responded that she had in fact been looking for a job but nobody
23 had called her back. (Tr. at 252-53.) Based on substantial evidence in the record, it appears that
24 plaintiff was able to hold jobs as restaurant hostess and playground attendant without significant
25 difficulty. See Michael, 2000 WL 1006534, at *6 (holding that a claimant's employment history
26 /////

1  may be considered in determining whether the ability to work is more than slightly affected by a
2  physical or mental impairment).

3        In a questionnaire dated September 27, 2002, plaintiff indicated that she did not
4  have any problems with her personal needs and grooming habits, that she cooked a variety of
5  dishes, that she did not often need help with shopping, that she did laundry and only required
6  help sometimes, and that she left her home frequently to go to the movies, out of town, or to the
7  mall. (Tr. at 132-35.) In a similar questionnaire, also dated September 27, 2002, plaintiff's
8  mother confirmed that there were no problems with plaintiff's grooming habits or ability to
9  prepare meals, that she went shopping with plaintiff "once in a while," that plaintiff handled all
10 her bills and checking, and that plaintiff did laundry. (Tr. at 126-29.) This testimony contradicts
11 plaintiff's testimony and medical reports indicating she has difficulties cooking and doing
12 laundry. (Tr. at 240, 268.) Based on substantial evidence in the record and plaintiff's own
13 testimony regarding her activities of daily living, the court finds that plaintiff's limitations with
14 regard to daily activities were at most moderate and not marked, as required by § 12.05D(1).

15       With respect to § 12.05D(3), there is evidence in the record that plaintiff may
16 have marked difficulties in maintaining concentration, persistence, or pace. Plaintiff testified
17 that she has such difficulties and sometimes forgets to do, or finish, her chores and has to be
18 reminded by her mother and sometimes had trouble remembering to place orders with the cook at
19 the Jamaica House restaurant. (Tr. at 189, 276.) In order to meet the requirements of § 12.05D,
20 however, a claimant's mental impairment must result in at least three of the four listed
21 limitations. Here, however, there is no evidence in the record that plaintiff suffers from marked
22 difficulties in maintaining social functioning, no evidence of repeated episodes of
23 decompensation, and, as noted above, no marked restriction of activities of daily living.
24 Therefore, plaintiff's mental impairment does not meet or equal § 12.05D.

25       In sum, substantial evidence supports the ALJ's conclusion at step three of the
26 sequential evaluation and demonstrates that plaintiff's restrictions were less than moderate.

Plaintiff has failed to establish that the ALJ improperly evaluated whether she met the requirements of § 12.05C or D.

**II.  Whether the ALJ Provided a Legal Basis for Rejecting Plaintiff's Testimony**

It is well established that the determination of credibility is a function of the ALJ acting on behalf of the Commissioner. Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An ALJ's assessment of credibility should, in general, be given great weight. Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). Thus, questions of credibility and resolution of conflicts in the testimony are usually deemed functions solely of the Commissioner. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). In evaluating a claimant's subjective testimony regarding the severity of the claimant's symptoms, an ALJ may consider the presence or absence of supporting objective medical evidence, along with other factors. Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc); see also Smolen, 80 F.3d at 1285. Ordinary techniques of credibility evaluation may be employed, and the adjudicator may take into account prior inconsistent statements or a lack of candor by the witness. Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989).

Nonetheless, an ALJ's decision to reject a claimant's subjective testimony regarding the severity of his or her symptoms must be supported by specific findings. Morgan, 169 F.3d at 599; Matthews v. Shalala, 10 F.3d 678, 679 (9th Cir. 1993) (citing Miller v. Heckler, 770 F.2d 845, 848 (9th Cir. 1985)). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan, 169 F.3d at 599.

Once a claimant has presented medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms merely because those symptoms are unsupported by objective medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). Rather, "'the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by

offering specific, clear and convincing reasons for doing so.'" Light, 119 F.3d at 792 (quoting Smolen, 80 F.3d at 1281). See also Reddick, 157 F.3d at 722. Although the ALJ may rely, in part, on his or her own observations, see Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), the ALJ cannot substitute such observations for medical diagnosis, Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).

Here, the ALJ found that plaintiff's testimony was not entirely credible because the limitations she claimed to have were inconsistent with her daily activities, her use of prescribed medication, and the weight of the evidence in the record. (Tr. at 26, 28.) The ALJ also cited inconsistencies between plaintiff's own statements made at different times, as well as between plaintiff's statements and Dr. Regazzi's evaluations. (Tr. at 26, 28.) Finally, the ALJ cited such signs of plaintiff's independence as her ability to use public transportation and to go out often with friends. (Tr. at 26.)

The court finds that the ALJ made specific findings in support of his finding that plaintiff's testimony was not entirely credible. The court recognizes that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." Reddick, 157 F.3d at 722. However, there is substantial evidence in this record that plaintiff's limitations are minimal with respect to many activities. (See tr. at 123-37, 189.) While plaintiff may not go about all of her activities with ease, the court finds that the ALJ fairly characterized the record and sufficiently stated specific, clear and convincing reasons for not fully crediting plaintiff's testimony regarding her limitations. See Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998). Plaintiff's argument to the contrary is rejected.

**III. Whether the ALJ Erred in Applying the Grids**

At the fifth and final step of the sequential evaluation process, the Commissioner satisfies his burden of showing that the claimant can perform other types of work in the national economy, given the claimant's age, education, and work experience, by either (1) applying the Medical-Vocational Guidelines, i.e., the grids, in appropriate circumstances or (2) taking the

testimony of a vocational expert. Burkhart, 856 F.2d at 1340 (citing Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 578 (9th Cir. 1988)); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

The grids are designed to show available work in the national economy for individuals with exertional (i.e., strength) limitations, as impacted by the factors of age, education, and work experience. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(d) & (e). The grids may be used only if they "'accurately and completely describe the claimant's abilities and limitations.'" Burkhart, 856 F.2d at 1340 (quoting Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985)). See also Reddick, 157 F.3d at 729. When a claimant's non-exertional limitations are sufficiently severe that they significantly limit the range of work permitted by the claimant's exertional limitations, the grids are inapplicable. Burkhart, 856 F.2d at 1340; Desrosiers, 846 F.2d at 577; see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983); Tackett, 180 F.3d at 1101-02; Cooper v. Bowen, 815 F.2d 557, 560 (9th Cir. 1987).

Use of the grids may be improper when the plaintiff's impairments are entirely nonexertional. Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989). "[W]hen a claimant's nonexertional impairments significantly diminish his ability to work, 'the [Commissioner] must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain or perform.'" Pratts v. Chater, 94 F.3d 34, 39 (2nd Cir. 1996) (quoting Bapp v. Bowen, 802 F.2d 601, 603 (2nd Cir. 1986)). See also Stewart v. Sullivan, 881 F.2d 740, 744 n.5 (9th Cir. 1989).

Plaintiff argues that given the ALJ's finding that she suffered from the severe impairment of mild mental retardation which limited her ability to perform work, at the very least a vocational expert should have been called to testify. Plaintiff contends that the ALJ erred by instead relying solely on the grids to show the availability of jobs she was capable of performing. The court agrees.

/////

The ALJ determined that plaintiff's only severe impairment is mild mental retardation. (Tr. at 19, 28.) The ALJ found the impairment severe because it "significantly limits the claimant's ability to perform basic mental activities such as understanding, remembering and carrying out simple instructions, responding appropriately to supervisors, coworkers and usual work situations and dealing with changes in routine work situations." (Tr. at 19.) The ALJ also found that plaintiff is functionally illiterate and has no past relevant work. (Tr. at 28.) The ALJ found no severe physical impairments, no physical limitations, the residual functional capacity to perform work at all exertional levels but that plaintiff's mental limitations may pose "significant compromise" to her potential occupational base. (Tr. at 25, 27.) Upon consideration of the medical evidence and plaintiff's subjective complaints, the ALJ determined that plaintiff should be limited to simple and repetitive tasks in order to accommodate her mental limitations. (Tr. at 26.)

Nonetheless, the ALJ noted that the grids may indicate a finding of not disabled if a claimant's nonexertional limitations do not significantly compromise the ability to perform work at all exertional levels. The ALJ proceeded to conclude that limiting plaintiff to simple and repetitive tasks will not preclude her from performing unskilled work, which involves little or no judgment to perform simple duties that can be learned on the job in a short period of time and ordinarily involves dealing primarily with objects rather than with data or people. (Tr. at 27.) Apparently relying solely on the grids, the ALJ found there to be approximately 2500 sedentary, light, and medium occupations at the unskilled level, each representing numerous jobs in the national economy. (Id.) Given the nature of plaintiff's limitations and the nature of unskilled work, the ALJ concluded that plaintiff's mental limitations would not significantly erode the unskilled occupational base available to her. (Tr. at 27-28.)

The ALJ attempted to avoid the simple task of hearing testimony from a vocational expert by concluding that since unskilled work involves "little or no judgment to perform simple duties" and "ordinarily" involves dealing primarily with objects rather than data

16

and people, plaintiff's mental retardation and related limitations would have no impact on her ability to perform the full range of unskilled work. The conclusion is both unsupported and illogical. The limitations which the ALJ found plaintiff to suffer from (mild mental retardation, functional illiteracy, etc.) are nonexertional limitations reducing the number of jobs available to her. See Meissl v. Barnhart, 403 F. Supp. 2d 981 (C.D. Cal. 2005) (recognizing that whether unskilled work involves simple and repetitive tasks depends on the level of reasoning required by the work). This is not a case in which the ALJ relied upon strong and substantial evidence in concluding that plaintiff's mental retardation and associated limitations would not reduce her available occupational base more than marginally. See Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 526 (1st Cir. 1989); Brown v. Apfel, 71 F. Supp. 2d 28, 37 (D.R.I. 1999), aff'd, 230 F.3d 1347 (1st Cir. 2000); cf. Guyton v. Apfel, 20 F. Supp. 2d 156, 162 (D. Mass. 1998). Rather, the ALJ simply concluded that such was the case.[3]

Plaintiff's nonexertional impairments stemming from her mild mental retardation clearly limit the range of work she can perform.[4] Thus, the grids did not accurately and completely describe her abilities and limitations. Testimony from a vocational expert is necessary under these circumstances. See Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001); Cooper v. Sullivan, 880 F.2d 1152, 1156 n.10 (9th Cir. 1989) ("However, if she were not capable of doing the full range of medium work because of a nonexertional impairment, then the ALJ would not be allowed to rely solely on the grids to direct a finding of not disabled."); see /////

---

[3] Had the ALJ called a vocational expert to testify it is possible, and perhaps even likely in light of the record, that a significant number of jobs in the economy which claimant can obtain or perform would have been identified. Unfortunately this was not done, necessitating remand.

[4] "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." Social Security Ruling No. 85-15, 1985 WL 56857, at *4. The record reflects that plaintiff has limitations in at least some of these areas.

also Carr v. Sullivan, 772 F. Supp. 522, 529 (E.D. Wash. 1991) ("A severe mental impairment necessarily creates limitations in functional capacity. . . .").

In light of this error, remand is required so that an ALJ can utilize the testimony of a vocational expert at step five of the sequential evaluation.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment and/or remand is granted in part and denied in part;

2. Defendant's cross-motion for summary judgment is granted in part and denied in part; and

3. The decision of the Commissioner of Social Security is reversed, and this case is remanded for further proceedings consistent with the analysis set forth herein. See 42 U.S.C. § 405(g), Sentence Four.

DATED: September 18, 2007.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw/jp
Ddad1/orders.socsec/armstrong1673.order